ROBERT A. WEIKERT (State Bar No. 121146)
VERONICA COLBY DEVITT (State Bar No. 79955)
JOHN A. CHATOWSKI (state Bar No. 174471)
THELEN REID BROWN RAYSMAN & STEINER LLP
101 Second Street, Suite 1800
San Francisco, CA  94105-3601
Telephone: 415-371-1200
Facsimile: 415-371-1211
raweikert@thelen.com
vdevitt@thelen.com
jachatowski@thelen.com

Attorneys for Plaintiff
XTENDED BEAUTY, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| XTENDED BEAUTY, INC., a California Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>XTREME LASHES, LLC, a Texas Limited Liability Corporation; and JOUMANA MOUSSELLI, an individual,<br><br>    Defendants. | CASE NO.  C 07-03391 MJJ<br><br>**PLAINTIFF XTENDED BEAUTY, INC.'S OPPOSITION TO DEFENDANTS XTREME LASHES, LLC AND JOUMANA MOUSSELLI'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**<br><br>Date of Hearing:  September 11, 2007<br>Time:  9:30 a.m.<br>Judge:  Hon. Martin J. Jenkins |

SF #1318188 v1

PLAINTIFF XTENDED BEAUTY, INC.'S OPPOSITION TO DEFENDANTS XTREME LASHES, LLC AND JOUMANA
MOUSSELLI'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE, CASE NO. C07-03391 MJJ

**TABLE OF CONTENTS**

**Pages**

I.    INTRODUCTION ...................................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................................2

III.  DISCUSSION .........................................................................................................................3

    A.    This Action Cannot Be Dismissed Because Venue Is Proper In This District ...................................................................................................................3

    B.    This Action Should Not Be Transferred For Convenience .......................................5

        1.    Defendants Have Offered No Evidence To Support Their Claims ...............5

        2.    This Action Should Not Be Transferred To Texas .......................................7

            (a)    This Court Should Defer To Xtended Beauty's Choice Of Forum .................................................................................................7

            (b)    Consideration Of The Relevant Factors Supports This Court Retaining Jurisdiction Over This Matter ..............................11

                (i)    Convenience Of The Parties .....................................................11

                (ii)   Convenience Of Witnesses .......................................................12

                (iii)  Judicial Economy And Relative Docket Congestion ............13

                (iv)  Relative Ease Of Access To Proof ..........................................13

                (v)   Availability Of Compulsory Process .....................................13

                (vi)  Familiarity With Governing State Law ................................14

                (vii) Whether Injunctive Relief Is Sought ....................................14

IV.  CONCLUSION .....................................................................................................................14

SF #1318188 v1    -i-

PLAINTIFF XTENDED BEAUTY, INC.'S OPPOSITION TO DEFENDANTS XTREME LASHES, LLC AND JOUMANA
MOUSSELLI'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE, CASE NO. C07-03391 MJJ

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alltrade, Inc. v. Uniweld Prod., Inc.*,
    946 F.2d 622 (9th Cir. 1991) ............................................................................................. 9-10

*Brillhart v. Excess Ins. Co.*,
    316 U.S. 491 (1942) ............................................................................................................ 11

*Church of Scientology v. United States Department of the Army*,
    611 F.2d 738 (9th Cir. 1979) ................................................................................................. 7

*Commodity Futures Trading Comm'n v. Savage*,
    611 F.2d 270 (9th Cir. 1979) ................................................................................................. 5

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) ................................................................................................. 7

*Dwyer v. General Motors Corporation*,
    853 F. Supp. 693 (S.D.N.Y. 1994) ...................................................................................... 12

*Froelich v. Petrelli*,
    472 F. Supp. 756 (D. Haw. 1979) ....................................................................................... 11

*Gregg Comm. Systems, Inc. v. AT&T Co.*,
    575 F. Supp. 1269 (N.D. Il. 1984) ......................................................................................... 5

*Gunthy-Renker Fitness, LLC v. ICON Health & Fitness, Inc.*,
    179 F.R.D. 264 (C.D. Cal. 1998) ........................................................................................... 9

*Gulf Ins. Co v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005) .................................................................................................. 4

*Harris Trust & Sav. Bank v. SLT Warehouse Co., Inc.*,
    605 F. Supp. 225 (N.D. Il. 1985) ........................................................................................... 6

*Heller Financial, Inc. v. Midwhey Powder Co.*,
    883 F.2d 1286 (7th Cir. 1989) ............................................................................................... 6

*Holder Corporation v. The Main Street Distribution, Inc.*,
    1987 U.S. Dist. LEXIS 10345 (D. Ariz. 1987) ..................................................................... 5

*Honda Associates v. Nozawa Trading, Inc.*,
    347 F. Supp. 886 (S.D.N.Y. 1974) ........................................................................................ 4

*In re Eastern Dist. Repetitive Stress Injury Litigation*,
    850 F. Supp. 188 (E.D.N.Y. 1994) ...................................................................................... 11

*In re Horseshoe Entertainment*,
    337 F.3d 429 (5th Cir. 2003) ............................................................................................... 11

*Jenkins Brick Co. v. Bremer*,
   321 F.3d 1366 (11th Cir. 2003) .................................................................................... 4

*Kasey v. Molybdenum Corp. of America*,
   408 F.2d 16 (9th Cir. 1969) ........................................................................................ 12

*Law Bulletin Pub. Co. v. LRP Publications, Inc.*,
   992 F. Supp. 1014 (N.D. Il. 1998) ........................................................................ 13-14

*Lewis v. ACB Business Services, Inc.*,
   135 F.3d 389 (6th Cir. 1998) ....................................................................................... 7

*Los Angeles Memorial Coliseum Comm'n v. NFL*,
   89 F.R.D. 498 (C.D. Cal. 1981) .................................................................................. 5

*Lujan v. National Wildlife Federation*,
   497 U.S. 871 (1990) .................................................................................................... 6

*Manuel v. Convergys Corporation*,
   430 F.3d 1132, 1135 (11th Cir. 2005) ......................................................................... 7

*Metropa Co., Ltd v. Choi*,
   458 F. Supp. 1052 (S.D.N.Y 1978) ........................................................................... 12

*Noerr Motor Freight, Inc. v. Eastern R.R. Presidents Conference*,
   113 F. Supp. 737 (E.D. Pa. 1953) ............................................................................... 6

*Off-The-Wall Products v. Hyman Products, Inc.*,
   684 F. Supp. 36 (S.D.N.Y. 1988) ............................................................................... 4

*Pacesetter Systems, Inc. v. Medtronic*,
   678 F.2d 93 (9th Cir. 1982) .................................................................................. 9-10

*R. Griggs Group, Ltd. v. Consolidated Shoe, Inc.*,
   1999 U.S. Dist. LEXIS 5426 (N.D. Cal. 1999) .......................................................... 4

*Reed v. Fine Oil & Chemical Co.*,
   995 F. Supp. 705 (E.D. Tex. 1998) ........................................................................... 13

*Reed Elsevier, Inc. v. Innovator Corp.*,
   105 F. Supp.2d 816 (S.D. Ohio 2000) ...................................................................... 11

*Royal Queentex Enterprises, Inc. v. Sara Lee Corporation*,
   2000 U.S. Dist. LEXIS 10139 (N.D. Cal. 2000) ................................................ passim

*Securities Investor Protection Corp. v. Vigman*,
   764 F.2d 1309 (9th Cir. 1985) .................................................................................... 7

*S.G. First of Michigan Corp. v. Bramlet*,
   141 F.3d 260 (6th Cir. 1998) ...................................................................................... 4

*Smith v. McIver*,
   22 U.S. (9 Wheat.) 532 (1824) .................................................................................... 1

SF #1318188 v1     -iii-

PLAINTIFF XTENDED BEAUTY, INC.'S OPPOSITION TO DEFENDANTS XTREME LASHES, LLC AND JOUMANA
MOUSSELLI'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE, CASE NO. C07-03391 MJJ

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988) .......................................................................................................... 11

*Stop-A-Flat Corp. v. Electra Start of Michigan, Inc.*,
   507 F. Supp. 647 (E.D. Pa. 1981) ..................................................................................... 6

*Tempco Electric Heater Corp. v. Omega Engineering, Inc.*,
   819 F.2d 746 (7th Cir. 1987) ........................................................................................... 11

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ................................................................................................. 12, 13

*Vanity Fair Mills, Inc. v. T. Eaton Co.*,
   234 F.2d 633 (2d Cir. 1956) .............................................................................................. 4

*Ward v. Follett Corp.*,
   158 F.R.D. 645 (N.D. Cal. 1994) .................................................................................... 10

*Windsurfing Intern., Inc. v. AMF Inc.*,
   828 F.2d 755 (Fed. Cir. 1989) .......................................................................................... 8

*Wilton v. Seven Falls*,
   515 U.S. 277 (1995) ........................................................................................................ 11

*Woodke v. Dahm*,
   70 F.3d 983 (8th Cir. 1995) ......................................................................................... 4, 5

*Z-Line Designs, Inc. v. Bell'O International LLC*,
   218 F.R.D. 663 (N.D. Cal. 2003) .................................................................................... 10

**STATUTES**

United States Code
   Title 28, § 1391(b) ........................................................................................................ 3-4

   Title 28, § 1404 .............................................................................................................. 11

   Title 28, § 1406 ................................................................................................................ 3

**RULES AND REGULATIONS**

N.D. Local Rule 7-5 ............................................................................................................... 16

## I. INTRODUCTION

Plaintiff Xtended Beauty, Inc. ("Xtended Beauty") submits this Opposition to the Motion to Dismiss or, in the Alternative, to Transfer Venue filed by Defendants Xtreme Lashes, LLC and Joumana Mousselli ("Defendants"). Defendants' motion, unsupported by *any* evidence whatsoever, should be denied because (1) venue is clearly proper in this Court; (2) the first-to-file rule compels that Plaintiff's choice of this forum be accorded substantial weight and should not be disregarded; and (3) this District is anything but an inconvenient forum.

This is a straightforward trademark infringement case involving relatively weak, descriptive marks. Defendants are seeking to thwart Xtended Beauty's right to use the "XTENDED BEAUTY" mark based primarily on a clearly descriptive mark/tag line "EXTEND YOUR BEAUTY." Under clear apprehension of litigation, Xtended Beauty properly filed this action in this Court seeking a declaration of the rights and liabilities of the parties with respect to Xtended Beauty's use of its mark.

Venue is proper in this District because a substantial part of the events or omissions at issue occurred in California, including in this District. In a trademark case, venue is proper where the alleged passing off occurred, or where consumers are likely to be confused by the accused goods. Because a majority of Xtended Beauty's customers are in California, and a majority of its products are sold in California, it is beyond dispute that venue is proper here.

Further, absent special circumstances (which do not exist here), the first-to-file rule compels that this Court retain jurisdiction over this case. Originally articulated by the Supreme Court in 1824, this rule provides that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject matter must decide it." *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535 (1824). Defendants have not shown and cannot show that compelling circumstances justify departing from this rule. While Defendants' counsel's June 20, 2007 letter threatened litigation if Xtended Beauty did not cease using its mark, there certainly were no specifics and no promises that suit would be brought on a date certain. Indeed, Defendants did not file their suit in Texas until nearly a month after June 30, 2007, the response deadline set forth in counsel's June 20 letter. Thus, Xtended Beauty is entitled to the strong presumption in favor of its choice of forum.

1  Finally, Defendants have not sustained their heavy burden to demonstrate that this action should
2  be transferred for convenience. Defendants have offered no evidence (let alone admissible
3  evidence) on any of the factors that courts consider in deciding motions to transfer. Moreover,
4  even if this Court were to consider Defendants' conclusory arguments, the balance of the relevant
5  factors clearly weighs in favor of the Court retaining jurisdiction over this matter.
6  Because Defendants have not demonstrated that the facts warrant this Court overriding Xtended
7  Beauty's proper choice of forum, Defendants' motion should be denied.

8  **II.    STATEMENT OF FACTS**

9         Xtended Beauty was incorporated in January 2007, and is in the business of selling semi-
10 permanent eyelash extensions and related products and services. Xtended Beauty's products and
11 services are sold primarily to distributors and wholesalers for the beauty and spa industry, and also
12 to beauty salons, spa operators, and lash extension professionals. (Lee Decl., ¶¶ 2, 3.)

13        Xtended Beauty's only office is in Hayward, California, and it has never had an office in
14 any other location, including in Texas. All of Xtended Beauty's business and corporate records
15 are located in its Hayward office. All of Xtended Beauty's bank accounts are in the San Francisco
16 Bay Area. Xtended Beauty owns no property and has no bank accounts in Texas. (*Id*., ¶ 2.)

17        The majority of Xtended Beauty's customers are located in California, including in the San
18 Francisco/San Jose area. (*Id.*, ¶ 4.) The majority of its products are sold in California, including
19 in the San Francisco/San Jose area. (*Id.*, ¶ 5.) The majority of the trade shows that Xtended
20 Beauty attends to promote its products have been and are held in California, including in the San
21 Francisco/San Jose area. (*Id*., ¶ 6.) The majority of Xtended Beauty's training sessions have
22 taken place and take place in California, including in the San Francisco/San Jose area. And all of
23 Xtended Beauty's trainers reside in the San Francisco/San Jose area. (*Id*, ¶ 7.)

24        Defendants Xtreme Lashes and Joumana Mousselli are also engaged in the business of
25 selling semi-permanent eyelash extensions and related products and services. (Complaint, ¶ 8;
26 Answer, ¶ 8.) Mousselli is the owner of an Intent To Use application for the alleged mark
27 "XTREME LASHES" (Ser. No. 78707172); an Intent To Use application for the alleged mark
28 "EXTEND YOUR BEAUTY" (Ser. No. 78698231); and an Intent To Use application for the

alleged mark "XTREME BEAUTY" (Ser. No. 78914879).  (Complaint, ¶ 9; Answer, ¶ 9.) Xtreme Lashes' products and services are primarily sold through a network of "certified trainers" developed and trained by Xtreme Lashes.  (Complaint, ¶ 8; Answer, ¶ 8.)  Xtreme Lashes and Mousselli both do business in California, including in this District.  (Complaint, ¶ 5; Answer, ¶ 5.)

On or about June 20, 2007, Xtended Beauty received a letter from Defendants' counsel in which she stated, among other things, that Xtended Beauty's use of the "XTENDED BEAUTY" mark "constitutes the use of a misleading representation, or false advertising," and has already caused actual [consumer] confusion," all in "violation of 15 U.S.C. § 1125(a)(1)" and Texas state law (Section 16.29 of the Texas Business & Commerce Code).  (Exhibit "A" to Weikert Decl.) Counsel also threatened legal action if Xtended Beauty did not agree to cease using its mark, but the letter did *not* state that suit would be filed against Plaintiff on June 30, 2007 (or offer any other specifics) if Plaintiff did not comply with Defendants' demands.  (*Id*.)

On June 28, 2007, Xtended Beauty filed this action, and on the same day, its counsel sent a courtesy copy of the Complaint to Defendants' counsel and offered to discuss settlement options prior to service of the Complaint.  (Exhibit "B" to Weikert Decl.)  Although Defendants' counsel received Plaintiffs' Complaint as early as July 2, 2007 (*See* Exhibit "C" to Weikert Decl.), Defendants did nothing for more than *three weeks* until, on July 27, 2007, they filed an action for trademark infringement in the Southern District of Texas.  (Exhibit A to Defendants' Request for Judicial Notice.)  Three days later, and before they even attempted to serve the Texas Complaint, Defendants filed this motion to dismiss.

### III.  DISCUSSION

**A.  This Action Cannot Be Dismissed Because Venue Is Proper In This District**

28 U.S.C. § 1406 provides that a court may dismiss an action for improper venue, or transfer the case to another district where the action could have been brought, "if it be in the interests of justice."  In a case such as this, where the Court's subject matter jurisdiction is not based solely on diversity of citizenship, venue is proper in either of the following districts: (1) if all defendants reside in the same state, a district where any defendant resides, (2) a district in which a "substantial part of the events or omissions" on which the claim is based occurred, or a

1  "substantial part of the property" that is the subject of the action is located, or (3) if there is no
2  district in which the action may otherwise be brought, the district "in which any defendant may be
3  found" (so-called residual venue).  28 U.S.C. § 1391(b).  Venue is proper here because a
4  "substantial part of the events or omissions" on which Defendants' claims are based occurred in
5  California, including in this District.  Plaintiff is headquartered here and the products bearing the
6  allegedly infringing mark are marketed and sold here. (Lee Decl., ¶¶ 3-5.)
7  Only those events or omissions that directly give rise to the claim at issue are relevant.  *Jenkins*
8  *Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).  However, neither a majority of the
9  relevant events need have occurred in the chosen district, nor must the events there predominate.
10 *Jenkins Brick, supra,* 231 F.3d at 1371; *Gulf Ins. Co v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir.
11 2005).  Thus, a plaintiff may choose either of several judicial districts, each having relatively
12 equal connections with the dispute.  *S.G. First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 264
13 (6th Cir. 1998).
14 In a case involving alleged trademark infringement, "[t]he place where the alleged passing off
15 occurred . . . provides an obviously correct venue."  *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir.
16 1995) (action dismissed because no evidence that defendant had any alleged infringing sales or
17 advertising in district).  The place "where consumers are alleged to be confused by the accused
18 goods" is also a proper venue.  *R. Griggs Group, Ltd. v. Consolidated Shoe, Inc.,* 1999 U.S. Dist.
19 LEXIS 5426, *10 (N.D. Cal. 1999).  *See also Vanity Fair Mills, Inc. v. T. Eaton Co*., 234 F.2d
20 633, 639 (2d Cir. 1956) ("[I]n cases of trade-mark infringement . . . the wrong takes place not
21 where the deceptive labels are affixed to the goods or where the goods are wrapped in the
22 misleading packages, but where the passing off occurs . . . ."); *Off-The-Wall Products v. Hyman*
23 *Products, Inc.*, 684 F. Supp. 36, 38 (S.D.N.Y. 1988) ("In a case of trademark infringement . . .
24 damage occurs wherever the allegedly infringing products are sold."); *Honda Associates v.*
25 *Nozawa Trading, Inc*., 347 F. Supp. 886, 888-889 (S.D.N.Y. 1974) (same).
26 Defendants claim that Plaintiff's use of the "XTENDED BEAUTY" mark infringes on
27 Defendants' marks, and constitutes "the use of a misleading representation, or false advertising."
28 (*See* Exhibit A to Weikert Decl.)  Thus, the location of Xtended Beauty's customers and sales is a

proper venue for this action. *See authorities supra.* The majority of Xtended Beauty's products are sold in California, including in the San Francisco/San Jose area. (Lee Decl., ¶ 5.)[1] The majority of the trade shows that Xtended Beauty attends to promote its products have occurred in California, including in the San Francisco/San Jose area. (*Id.*, ¶ 6.) The majority of Xtended Beauty's training sessions have occurred in California, including in the San Francisco/San Jose area. All of Xtended Beauty's trainers reside in the San Francisco/San Jose area. (*Id.*, ¶ 7) Thus, it is beyond dispute that this District "provides an obvious correct venue." *Woodke,* 70 F.3d at 985.

Moreover, the burden is on Defendants to show that venue "is clearly proper elsewhere." *Holder Corporation v. The Main Street Distribution, Inc.*, 1987 U.S. Dist. LEXIS 10345, * 9 (D. Ariz. 1987). Yet Defendants' motion is completely devoid of any discussion, let alone any admissible evidence, tending to support its suggestion that this action could have originally been brought in the Southern District of Texas. Indeed, Defendants' Complaint in the Texas action does not even allege that venue for their infringement claims is proper in the Southern District of Texas. (*See* Exhibit 1 to Defendants' Request for Judicial Notice.) Accordingly, this Court should deny Defendants' motion to dismiss Xtended Beauty's Complaint for improper venue.

### B. This Action Should Not Be Transferred For Convenience

#### 1. Defendants Have Offered No Evidence To Support Their Claims

Defendants have the burden to establish that this Court should transfer this action to the Southern District of Texas for convenience. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Los Angeles Memorial Coliseum Comm'n v. NFL*, 89 F.R.D. 498, 499 (C.D. Cal. 1981), *aff'd*, 726 F.2d 181 (9th Cir. 1984); *Gregg Comm. Systems, Inc. v. AT&T Co.*, 575 F. Supp. 1269, 1270 (N.D. Il. 1984). This again includes establishing that the action could have originally been brought in Texas. *Commodity, supra*, 611 F.2d at 279.

---

[1] Although it is not Plaintiff's burden to identify the specific witnesses that it believes will have information relevant to the parties' dispute, Plaintiff is informed and believes that its customers
(footnote continued on next page)

Further, since Defendants' arguments here go beyond the four corners of the pleadings, they must satisfy their burden through use of declarations, affidavits or other admissible evidence. *Noerr Motor Freight, Inc. v. Eastern R.R. Presidents Conf.*, 113 F. Supp. 737, 745 (E.D. Pa. 1953) (deciding whether venue was proper). Conclusory, unsupported allegations are not sufficient. N.D. Local Rule 7-5(b); *Stop-A-Flat Corp. v. Electra Start of Michigan, Inc.*, 507 F. Supp. 647, 652 (E.D. Pa. 1981). A defendant cannot rely on "vague generalizations" as to convenience, but rather must identify the key witnesses to be called and to present a generalized statement of what their testimony would include. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293-1294 (7th Cir. 1989) (Moving party "supplied nothing in the way of affidavits, depositions, stipulations, or any other type of document containing facts tending to establish who (specifically) it planned to call or the materiality of that testimony.") This evidence must demonstrate that litigation in the chosen District "could result in a 'clear balance of inconvenience.'" *Harris Trust & Sav. Bank v. SLT Warehouse Co., Inc.*, 605 F. Supp. 225, 227 (N.D. Il. 1985).

Here, not only have Defendants offered no competent admissible evidence to support their theory that this action could have been brought in the Southern District of Texas, and that Texas would be a more appropriate forum for this action, but they also have not even explained why they believe the balance of the relevant factors supports a transfer.[2] The fact that Defendants may have been planning to file their suit in Texas (Motion, 5:7-8) is not a factor that courts consider. Further, although Defendants' Complaint in the Texas action includes claims under Texas law (Motion, 5:8), Defendants' Complaint also includes claims under federal trademark law, and

---

(footnote continued from previous page)

and the end users of its products will be potential witnesses regarding the issue of consumer confusion (if there is any).

[2] Further, Defendants should not be permitted to try to cure these evidentiary defects for the first time in its reply papers. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894-895 (1990) (district court did not abuse discretion by refusing to consider late-filed affidavits).

Defendants do not dispute that this Court is capable of deciding the legal issues in this straightforward trademark case.[3]

Thus, because Defendants have not sustained their evidentiary burden to establish that a transfer is warranted, their motion should be denied.

### 2. This Action Should Not Be Transferred To Texas

Even assuming, *arguendo*, that this Court is inclined to consider Defendants' arguments in the absence of any supporting evidence, an examination of the relevant factors weighs against transferring this action.

#### (a) This Court Should Defer To Xtended Beauty's Choice Of Forum

"The first-to-file rule was developed to 'serve[] the purpose of promoting efficiency well and should not be disregarded lightly.'" *Church of Scientology v. United States Department of the Army*, 611 F.2d 738, 750 (9th Cir. 1979) (citations omitted). Thus, "[i]n motions to transfer venue, there is a *strong presumption* in favor if plaintiff's choice of forum." *Royal Queentex Enterprises, Inc. v. Sara Lee Corporation*, 2000 U.S. Dist. LEXIS 10139, *9 (N.D. Cal. 2000) (emphasis added). *See also Manuel v. Convergys Corporation*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("When two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule.") To overcome this presumption "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (emphasis added). *See also*

---

[3] Defendants also point out in their motion that the United States Patent and Trademark Office ("USPTO") has suspended plaintiff's "XTENDED BEAUTY" application. (Motion, 3:13-16) This fact is irrelevant to the question of whether venue is proper here, or whether this action should be transferred to the Southern District of Texas. Further, the suspension notice is merely an administrative act by a trademark examiner who has done nothing more than make a preliminary determination that "if and when [the EXTEND YOUR BEAUTY applications] registers, [it] may be cited against this application in a refusal to register." If such a citation issues, an applicant has at least two opportunities to respond to overcome the refusal. There has been no finding by the USPTO that Plaintiff's mark is confusingly similar to Defendants' mark or any other mark.

1  *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1313 (9th Cir. 1985); *Lewis v. ACB*
2  *Business Services, Inc.*, 135 F.3d 389, 413 (6th Cir. 1998).
3  Defendants here dispute the degree of deference that should be afforded Xtended Beauty's choice
4  of forum, claiming (again without any evidentiary support) that Xtended Beauty engaged in
5  improper "forum shopping" in anticipation of Defendants' lawsuit.  Defendants' argument is
6  without merit.
7  A similar assertion was previously addressed by this Court in *Royal Queentex, supra*.  There,
8  counsel for the defendant Sara Lee sent a cease and desist letter to Royal Queentex claiming that
9  its "Leg Avenue" product mark was infringing on and diluting Sara Lee's "L'EGGS" mark.  Sara
10 Lee's counsel stated in her letter that if a response was not received within fourteen days with
11 assurances that Royal Queentex would cease its alleged infringing activities, then she was
12 authorized "to take further legal action necessary and appropriate to enforce [Sara Lee's] valuable
13 trademark rights."  *Royal Queentex, supra, 2000 U.S. Dist. LEXIS 10139, at *4-5*.  Three days
14 after counsel's letter was delivered to Royal Queentex—and within counsel's fourteen day
15 deadline—Royal Queentex filed a declaratory relief action in the Northern District of California.
16 *Id.* at *5.  Four weeks later, Sara Lee filed suit against Royal Queentex for trademark
17 infringement in federal court in North Carolina.  *Id.*
18 Sara Lee moved to transfer the California action to North Carolina on the alleged grounds that
19 Royal Queentex engaged in bad faith forum shopping in filing the California action and, therefore,
20 its choice of forum should be afforded no weight, and the convenience factors balanced in favor of
21 transferring the case.  This Court rejected both arguments.
22 Like the Defendants here, Sara Lee asserted that Royal Queentex's complaint was filed in bad
23 faith because "(1) either the letter to Royal Queentex did not raise a justiciable controversy, in
24 which Royal Queentex would have no grounds for declaratory judgment action, or (2) the letter
25 contained a specific threat of imminent suit by Sara Lee thereby making this action anticipatory."
26 *Id.* at *10-11.  (*Compare* Motion, 4:11-18.)  This Court rejected out of hand Sara Lee's first
27 contention, finding that Sara Lee's conduct created a real and reasonable apprehension of liability.
28 *Id.* at *11 (*citing Windsurfing Intern., Inc. v. AMF Inc.*, 828 F.2d 755, 757-58 (Fed. Cir. 1989)).

As to Sara Lee's second contention, this Court pointed out that "a cease and desist letter is not dispositive unless it provides 'specific, concrete indications that a suit by Defendant was imminent.'" *Id.* at *11 (citations omitted). Sara Lee's letter, this Court noted, "was an invitation to settle the matter amicably, yet clearly intimated legal action if this effort was not quickly fruitful." Thus, this Court found that Sara Lee's letter "constituted specific concrete indications of a legal dispute, but not specific, concrete indications that suit was imminent . . . ." *Id.* at *16.

A similar result was reached in *Gunthy-Renker Fitness, LLC v. ICON Health & Fitness, Inc.*, 179 F.R.D. 264 (C.D. Cal. 1998), a case cited by Defendants in their motion. In *Gunthy-Renker*, a patent case, counsel for the defendant Precor sent a letter to Gunthy-Renker notifying it that his client had certain patent rights in a training device, and encouraging dialogue so as to avoid the sale of potentially infringing devices. Gunthy-Renker responded by filing a declaratory relief action seeking a declaration that its device did not infringe upon the defendants' patents. The day after Gunthy-Renker perfected service on Precor, Precor sued Gunthy-Renker and others in the Western District of Washington for patent infringement. Precor then moved to transfer, stay or dismiss the California action. *Gunthy-Renker*, *supra*, 179 F.R.D. at 268-269. On the question of whether plaintiff's complaint was "anticipatory," the court refused to disregard the first-to-file rule, finding that Precor's counsel's statements in his letter giving notice of the potential for patent infringements "at best amount to veiled threats of legal action against the plaintiff." *Id.* at 271.

The same result as in *Royal Queentex* and *Gunthy-Renker* is compelled here. Defendants' counsel's letter constituted "specific concrete indications of a legal dispute" for purposes of the Declaratory Relief Act, but did not provide "specific concrete indications" that suit would be filed on June 30, 2007 or was imminent. (Exhibit A to Weikert Decl.) Indeed, the letter merely states that if Xtreme Beauty did not respond by June 30 with a letter indicating that it would cease all use of its "XTENDED BEAUTY" mark, Defendants would take "legal action" at some unidentified time and place, and that this "legal action" would involve "filing suit." (*Id.*) Indeed, Xtreme Lashes did not file its Texas Complaint until July 27, 2007, nearly a *month* after the June 30 response deadline set forth in counsel's June 20, 2007 letter. Thus, there is no reason not to

1  adhere to the first-to-file rule here, and accord Plaintiff's choice of forum the deference required
2  by law.
3  The authorities relied upon by Defendants are misplaced. *Pacesetter Systems, Inc. v. Medtronic*,
4  678 F.2d 93 (9th Cir. 1982), *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622 (9th Cir. 1991), and
5  *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994), all involved cases where the district
6  court was asked to stay or dismiss the *second-filed* suit (the equivalent to a motion by Xtended
7  Beauty to dismiss Defendants' Texas action). Further, in *Pacesetter Systems* and *Ward* the district
8  court found, and the Ninth Circuit agreed, that the first-to-file rule compelled the dismissal of the
9  second-filed suits in favor of the earlier actions. In *Alltrade*, the Ninth Circuit agreed that the
10  first-to-file rule applied, but reversed as to the remedy, holding that because of the status of the
11  first-filed suit the second should have been *stayed* not dismissed.
12  In *Z-Line Designs, Inc. v. Bell'O International LLC*, 218 F.R.D. 663 (N.D. Cal. 2003), also cited
13  by Defendants, Judge Whyte of this Court dismissed a copyright declaratory infringement action
14  in favor of a second-filed action by the defendant, whose counsel had earlier sent a cease and
15  desist letter to the plaintiff. Z-Line's counsel requested and was granted two extensions to
16  respond to defendant's counsel's letter. From both parties' perspective, the deadlines were
17  extended in order to explore settlement possibilities. Z-Line then turned around and filed its
18  complaint during the second extension period. *Z-Line Designs, supra,* 218 F.R.D. at 666. Bell'O
19  filed its complaint in New Jersey two days later. *Id.* at 667. The district court found that under the
20  totality of the circumstances, Z-line filed its action because of the threat of imminent suit by
21  Bell'O. In so doing, Judge Whyte distinguished this Court's opinion in *Royal Queentex*, finding
22  that in that case "there was no misleading communications by the first filing party before filing
23  suit," and in Z-Line, "plaintiff's counsel accepted the second deadline to discuss . . . settlement
24  with Z-Line, and created a reasonable expectation that Z-Line would explore settlement rather
25  than litigation. This was a misleading communication." *Id.* at 666.

By contrast, here there were no "misleading communications" designed to prevent Defendants from filing suit.[4] Further, it is clear that Defendants had no intention of *immediately* commencing suit against Xtended Beauty at the time their counsel sent her letter, and it was only after Xtended Beauty exercised its rights under the Declaratory Judgment Act that Defendants "scrambled" to prepare their Texas Complaint and then file this unfounded motion.

Finally, Defendants' reliance on *Wilton v. Seven Falls*, 515 U.S. 277 (1995) and *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987) is misplaced because both of those cases concerned the *Brillhart* abstention doctrine (*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)), and have nothing to do with the first-to-file rule or transfer motions.

### (b) Consideration Of The Relevant Factors Supports This Court Retaining Jurisdiction Over This Matter

Even assuming that this Court declines to follow the first-to-file rule, finds that Xtended Beauty's choice of forum should be afforded little or no weight, and excuses Defendants' failure to explain how and why the various "convenience factors" support their request for a transfer—as well as their failure to offer any admissible evidence to support their claims—, an examination of the relevant factors[5] weigh decisively against transferring this action to Texas.

### (i) Convenience Of The Parties

"The venue transfer provisions of Section 1404(a) are not meant to merely shift the inconvenience to the plaintiff." *Reed Elsevier, Inc. v. Innovator Corp.,* 105 F. Supp.2d 816, 821 (S.D. Ohio 2000). Thus, while it may indeed be more convenient for Defendants to litigate this action in

---

[4] Xtended Beauty's counsel sent Defendants' counsel a letter on June 28, 2007, with a copy of Xtended Beauty's Complaint and offering to discuss settlement options, but Defendants' counsel did not respond. (*See* Exhibit "B" to Weikert Decl.)

[5] Some factors that courts sometimes consider clearly do not apply to this case. For example, some courts consider whether the action can be consolidated in multi-district litigation. *See, e.g., In re Eastern Dist. Repetitive Stress Injury Litigation*, 850 F. Supp. 188, 196 (E.D.N.Y. 1994). Some cases involve contracts with forum selection clauses, which may or may not control. *See, e.g. Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). Other courts have been reluctant to transfer a case to another jurisdiction if to do so would create statute of limitations problems for the plaintiff. *See, e.g., Froelich v. Petrelli*, 472 F. Supp. 756, 761 (D. Haw. 1979).
(footnote continued on next page)

1  Texas, this factor must be "highly" in their favor in order to support a transfer. *See Royal*
2  *Queentex,* 2000 U.S. Dist. LEXIS 10139, * 17. This Defendants have not shown and cannot
3  show.
4  On the other side of the coin, Xtended Beauty will clearly be inconvenienced by litigating this
5  case in Texas. Its only office and all of its documents are located in this District. (Lee Decl., ¶ 2.)
6  Further, Xtended Beauty is informed and believes that Defendants would be in a better position to
7  bear the travel costs associated with the trial of this matter in this District. *Compare Dwyer v.*
8  *General Motors Corporation*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994). Thus, this factor weighs
9  against transfer.

### (ii) Convenience Of Witnesses

11  "One of the most important factors in determining whether to grant a motion to transfer venue is
12  the convenience of the witnesses." *Royal Queentex, supra*, 2000 U.S. Dist. LEXIS 10139, at *18.
13  To demonstrate inconvenience, a defendant "should produce information regarding the identity
14  and location of the witnesses, the content of their testimony, and why such testimony is relevant to
15  the action. . . . The Court will consider not only the number of witnesses located in the respective
16  districts, but also the nature and quality of their testimony." *Id.* at * 19.
17  Here, Defendants have not identified a single third-party witness in Texas, let alone the subject of
18  their testimony, to support their request for a transfer. Further, because the majority of Xtended
19  Beauty's sales are in California, including in this District, most of the potential evidence regarding
20  the sale of Xtended Beauty's products and its customers, and consequently the subject of
21  consumer confusion (if there is any) would exist in California. *Compare Metropa Co., Ltd v.*
22  *Choi*, 458 F. Supp. 1052, 1056 (S.D.N.Y 1978) (Holding that trademark infringement action
23  should be transferred from New York to California "[n]ot only are all the defendant's records and

---

(footnote continued from previous page)

Finally, some statutes not at issue here have special venue provisions. *See, e.g., In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003) (Title VII case).

potential witnesses in Los Angeles, California, but since its marketing area is centered in California, most potential evidence concerning sales of the respective products of the parties and likelihood of confusion exists in California, not in New York.")

### (iii) Judicial Economy And Relative Docket Congestion

Another factor courts sometimes consider in deciding whether to transfer for convenience is whether to do so would avoid duplicative litigation, effect judicial economy, and prevent waste of time and money. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Similarly, courts sometimes examine the relative congestion of the two forums. *Kasey v. Molybdenum Corp. of America*, 408 F.2d 16, 20 (9th Cir. 1969).

Plaintiff herein intends to move to dismiss or transfer the Texas action to this Court, which will avoid any potential duplication of litigation. Further, the median number of months from filing to disposition of civil cases in the Northern District—for the 12-month period ending September 30, 2007—is 7.4 months, and from filing to trial is 25 months. The Southern District's figures for the same period is 8.6 months and 18.8 months, respectively. (Exhibit "D" to Weikert Decl.) Thus, these factors would not weigh in favor of transfer.

### (iv) Relative Ease Of Access To Proof

"Absent any other grounds for transfer, the fact that records are located in a particular district is not itself sufficient to support a motion to transfer." *Royal Queentex, supra*, 2000 U.S. Dist. LEXIS 10139, at * 21-22. This factor does not strongly weigh in favor of transfer because if this action remains in this District, Defendants will have to ship documents here, and if the case is transferred to Texas, Xtended Beauty will need to do the same.

### (v) Availability Of Compulsory Process

Some courts consider the reach of the Court's subpoena power to secure the attendance of witnesses in deciding whether to transfer an action. *See, e.g., Reed v. Fine Oil & Chemical Co.*, 995 F. Supp. 705, 714 (E.D. Tex. 1998). Here, because the majority of Xtended Beauty's sales are in California, including in this District, most of the potential evidence regarding Xtended Beauty's customers and on the subject of consumer confusion (if there is any) will exist in California. And

1 it would be far easier to compel the attendance of California witnesses in this District than the

2 Southern District of Texas where Defendants' action is pending.

### (vi)     Familiarity With Governing State Law

This is a simple federal trademark case in which Defendants have added a duplicative state law claim in their Texas Complaint.  Since this case involves routine issues of law which this Court is fully capable of deciding, this factor weighs against a transfer.  Compare *Van Dusen, supra*, 376 U.S. at 645.

### (vii)     Whether Injunctive Relief Is Sought

Finally, if an action involves a claim for injunctive relief, some courts will consider whether one court or the other will be "closer to the action" and better able to monitor compliance with any injunction that may be entered.  *See, e.g., Law Bulletin Pub. Co. v. LRP Publications, Inc.*, 992 F. Supp. 1014, 1020-1021 (N.D. Il. 1998) (claim for breach of contract and for violation of the Lanham Act).  Here, because Xtended Beauty's offices are in this District, it would be far more logical to have this Court monitor any injunction that in the unlikely event may be entered, rather than a Texas court a thousand miles away.   Thus, this factor weighs against a transfer.

## IV.     CONCLUSION

Venue is proper in this District, and Defendants have offered *no evidence* demonstrating that this action could have been brought in the Southern District of Texas, and that the balance of the relevant "convenience factors" warrants a transfer of this action.  Defendants have not sustained their heavy burden of overcoming Xtended Beauty's legitimate selection of this forum,

///
///
///
///
///
///
///
///

1  and thus there is no basis for not applying the first-to-file rule.  Defendants' motion should,
2  therefore, be denied.

3  Dated:  August 21, 2007                    THELEN REID BROWN RAYSMAN & STEINER LLP

5                                              By _____/s/ Robert A. Weikert_____
                                                   ROBERT A. WEIKERT
6                                                  Attorneys for Plaintiff
                                                   XTENDED BEAUTY, INC.